# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1389

_____

United States of America,       *
                                         *

           Appellee,         *

                                         *    Appeal from the United States

      v.                             *    District Court for the Southern

                                         *    District of Iowa.

Michael Carlos Cooper Wiest,    *

                                         *

           Appellant.        *

_____

Submitted: November 17, 2009
Filed: March 4, 2010

_____

Before MURPHY, SMITH and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Michael Carlos Cooper Wiest was indicted for three bank robberies under 18 U.S.C. § 2113(a), and three related counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(a). Wiest pled not guilty, and moved to suppress some evidence. His motion to suppress was denied. The jury found Wiest guilty on all counts, and he was sentenced to a total of 696 months (58 years). Wiest appeals, arguing that (1) the district court[1] erred in denying his motion to suppress, (2) the evidence was insufficient to support his convictions, and (3) the

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

mandatory minimum sentence of 684 months for three violations of § 924(c) violates the Eighth Amendment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

A lone robber held up a bank and two credit unions in Des Moines during the week before Christmas in 2006. Each time, witnesses identified the robber as a polite, partly masked, short, Hispanic male with a long-barrel gun. Surveillance video recorded each robbery. Police focused on Wiest as a suspect when two callers, after viewing local broadcasts of the robbery, said the robber resembled Wiest. One caller also told police that she had recently seen Wiest with a "wad of cash" in his wallet.

Police traced Wiest to Sheldon, Iowa, where he was staying in the home of his girlfriend's stepmother (Deb Martins). He was arrested on outstanding warrants. Wiest's clothes, found in the laundry room of the home, matched those the robber wore in two robberies. In the trunk of his girlfriend's car was a gun (.22 caliber rifle with a broken stock) matching the description of the gun used in the robberies. Wiest moved to suppress the clothing from the laundry room, arguing that police did not have a warrant to search the house and that Ms. Martins did not have apparent authority to consent to the seizure of his clothing. While the officer who recovered the clothing stated that he asked Ms. Martins if Wiest had any belongings in her home, Ms. Martins says she voluntarily offered his clothing to police. The district court denied the motion to suppress.

At trial a witness testified he had seen the .22 caliber rifle with the broken stock in Wiest's car, and Wiest had told him not to touch it because it was loaded and that he had used it "for a couple different jobs." Two other witnesses testified that Wiest said he committed the robberies. The jury also saw surveillance video from two

robberies, where the robber appears to be wearing clothes that look like some of the clothes recovered from Ms. Martins's home.

## II.

### A.

Wiest argues that the district court erred in denying his motion to suppress the clothing found in Ms. Martins's home. He contends that she acted as an instrument or agent of the government when she took his clothes and turned them over to police, in violation of the Fourth Amendment.

This court reviews de novo a district court's conclusions of law regarding a motion to suppress, and its findings of fact for clear error. *United States v. Flores*, 474 F.3d 1142, 1144 (8th Cir. 2007). The threshold issue is whether Wiest had a legitimate expectation of privacy. "The Fourth Amendment protects 'against unreasonable searches and seizures,' but its protections are personal and cannot be asserted by persons lacking a 'legitimate expectation of privacy' in the place searched." *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir. 2003) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Further, "status as an overnight guest is alone enough to show that defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). However, "[f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with... a place where [the guest] and his possessions will not be disturbed by anyone *but his host and those his host allows inside*." *Id.* at 99 (emphasis added). According to the record, Wiest spent the night before he was arrested at Ms. Martins's home, giving him "status as an overnight guest," with some expectation of privacy. However, that expectation is limited by the fact that Ms. Martins lived in the home, and shared use of the laundry

room. Wiest had no legitimate expectation that his possessions were private from Ms. Martins.

Wiest argues that Ms. Martins was a "government actor" for Fourth Amendment purposes.

> Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the amendment protects against such intrusion if the private party acted as an instrument or agent of the government . . . . Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances.

*Skinner v. Railway Labor Executive Ass'n*, 489 U.S. 602, 604 (1989). "In considering whether conduct of a private citizen is subject to the Fourth Amendment, our court considers 'whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and whether the citizen acted at the government's request.'" *United States v. Inman*, 558 F.3d 742, 745 (8th Cir. 2009) (quoting *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004)).

In this case, the government did have knowledge of Ms. Martins's conduct (although it is not intrusive for her to take clothes out of her own washer and dryer). There was conflicting testimony whether Ms. Martins intended to assist law enforcement or instead acted to further her own purposes, and similarly whether she acted at the government's request. The on-scene officer says he asked her if Wiest had any property in the house, but Ms. Martins testifies that she, unprompted, turned Wiest's clothes over to police because she didn't want them left in her home. The district court found that when Ms. Martins turned the clothes over, it was a "voluntary and unsolicited act," and this is not clear error. In light of all the circumstances, Ms.

Martins was not an instrument or agent of the government for Fourth Amendment purposes. Because the Fourth Amendment does not apply to her conduct, the clothing was properly admitted.

## B.

Wiest argues that the evidence was insufficient to support his convictions. This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). Evidence is to be viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. *Id*. Only where no reasonable jury could find all the elements beyond a reasonable doubt is reversal appropriate. *Id*. This court does not weigh the evidence or the credibility of the witnesses. *Id*. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict. *Id*.

Wiest essentially contends that (1) the clothing seized either does not match clothing worn during the robberies, or is not so distinctive as to tie him to them, (2) the witnesses who link Wiest to the gun found in the trunk of his girlfriend's car and who said he admitted to the robberies are not credible, (3) no money was ever recovered, and (4) no bank employees positively identify Wiest. However, the jury saw the seized clothing, the surveillance tapes of the robberies (allowing comparison to the robber's clothing), and the firearm seized from the girlfriend's car (which matched the firearm that one witness saw in Wiest's car, and apparently matched the firearm in the surveillance tapes). The jury also heard testimony that Wiest said he used the gun "for a couple different jobs." Two other people testified that Wiest told them he committed the robberies. The jury's credibility determinations are virtually unreviewable on appeal. *United States v. Trogdon*, 575 F.3d 762, 767 (8th Cir. 2009). This is sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Wiest committed the robberies, and used the gun to do them.

-5-

C.

Wiest argues that the mandatory minimum sentence of 684 months (57 years) for his three 18 U.S.C. § 924(c) convictions violates the Eighth Amendment. This court reviews de novo an Eighth Amendment challenge to a sentence. *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008). Under 18 U.S.C. § 924(c)(1)(B) and (C), Wiest's first conviction for a § 924(c) offense required a sentence of not less than 7 years, and the subsequent two convictions each required a 25-year sentence. All of the § 924(c) sentences must be served consecutively to one another and to Wiest's robbery counts. 18 U.S.C. § 924(c)(1)(D)(ii). The "second or subsequent" conviction can occur in the same proceeding. *Deal v. United States*, 508 U.S. 129, 134-36 (1993).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (rejecting an argument that California's three-strikes law violated the Eighth Amendment in a case when Ewing was sentenced to 25-years-to-life after stealing three golf clubs) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment. *Paton*, 535 F.3d at 838 (upholding a life sentence for five counts of production of child pornography).

This court has adopted Justice Kennedy's analysis in *Harmelin* to determine whether a sentence is "grossly disproportionate" to a crime and thus violates the Eighth Amendment. *See Henderson v. Norris*, 258 F.3d 706, 708-09 (8th Cir. 2001). The following principles inform the proportionality analysis: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that proportionality review be guided by objective factors." *Harmelin*, 501 U.S. at 1001. These principles inform the final principle that

the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Id*. (internal citations omitted). "[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality." *Id*.

Within the threshold comparison, this court looks first to the gravity of the crime, considering the harm caused or threatened to the victim or to society, and the culpability and degree of the defendant's involvement. *Henderson*, 258 F.3d at 709. Wiest argues that although bank robberies are generally serious crimes, his were less serious because he did not discharge the weapon or point it at customers, and he was quick and polite. However, as the government notes, Wiest did point the gun at a bank teller, and another bank teller has continuing issues regarding "extreme amounts of fear" after the robbery. Wiest did display the firearm at each robbery.

As to culpability, Wiest argues that he was 18 at the time of the offenses, all the robberies were committed within a week, and he has no prior robbery convictions. The government counters that Wiest has accumulated a total of eight criminal history points despite his youth, and that he wrote a letter to a friend from jail threatening a witness while awaiting trial.

As for the sentence imposed, Wiest contends that he would have been sentenced to 210-262 months under the guidelines if he were charged with the robberies and given a five-level increase for brandishing a firearm. He also notes that he would have received a much shorter sentence under Iowa law. These arguments are intrajurisdictional and interjurisdictional comparisons inappropriate for the threshold inquiry. *See Harmelin*, 501 U.S. at 1001. Wiest also emphasizes that an internal Justice Department memo urges federal prosecutors to prosecute only two § 924(c) violations in cases with three or more provable violations. However, as the

government correctly notes, these recommendations apply "only in the context of a negotiated plea agreement." Here, there was no plea agreement. Comparison of the 684-month sentence to the robbery of three financial institutions with a gun does not lead to an inference of gross disproportionality. Although the sentence is harsh, the crimes are very serious.

Although this court has not directly addressed whether consecutive sentences under § 924(c) violate the Eighth Amendment, other circuits uphold similar sentences under § 924(c). *See United States v. Walker*, 473 F.3d 71, 79-84 (3rd Cir. 2007) (upholding a 55-year mandatory sentence for three § 924(c) counts of using a firearm during a crime of violence); *United States v. Kahn*, 461 F.3d 477, 494-95 (4th Cir. 2006) (upholding multiple defendants' mandatory sentences for multiple violations of § 924(c)); *United States v. Angelos*, 433 F.3d 738, 750-53 (10th Cir. 2006) (upholding a 55-year mandatory sentence for three violations of § 924(c)); *United States v. Beverly*, 369 F.3d 516, 536-38 (6th Cir. 2004) (upholding a 71-year mandatory sentence for various bank robbery charges and three violations of § 924(c)); *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998) (upholding an 83-year mandatory sentence for seven robbery convictions and four violations of § 924(c)); *United States v. Lopez*, 37 F.3d 565, 571 (9th Cir. 1994) (upholding a 25-year mandatory sentence for two violations of § 924(c), stating that "[a] sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual"), *vacated on other grounds*, 516 U.S. 1022 (1995). No circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment. Wiest's sentence was not grossly disproportionate to the crime committed, and does not violate the Eighth Amendment.[2]

---

[2]The Supreme Court has heard argument in *Sullivan v. Florida*, No. 08-7621 (U.S. argued Nov. 9, 2009), on the question whether a life-without-parole sentence to a 13-year-old is cruel and unusual punishment. As Wiest was an adult at the time of the offenses and did not receive a life sentence, the facts of *Sullivan* are distinguishable. *See United States v. McDonel*, No. 08-2182, 2010 WL 323372, at

III.

The judgment of the district court is affirmed.

_____

*6 (6th Cir. Jan. 28, 2010) (upholding a 107-year mandatory sentence imposed on a 19-year-old offender for five violations of § 924(c)).

-9-