# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1635

_____

United States of America,            *
                                     *
            Appellee,                *
                                     *   Appeal from the United States
      v.                             *   District Court for the
                                     *   Northern District of Iowa.
Kevin Eugene Lee,                    *
                                     *
            Appellant.               *

_____

Submitted: September 23, 2010
Filed: November 4, 2010

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Kevin Lee pleaded guilty to being a felon in possession of a firearm and to possessing stolen firearms, *see* 18 U.S.C. § 922(g)(1), (j), the district court[1] sentenced him to life in prison. Mr. Lee appealed his sentence, and we affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I.

Mr. Lee first argues that the district court erred in categorizing him as an armed career criminal under § 4B1.4 of the United States Sentencing Guidelines because he did not have the requisite predicate offenses. An offender is an armed career criminal under the guidelines if he is subject to the enhanced sentencing provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). U.S.S.G. § 4B1.4(a).

A person convicted of being a felon in possession of a firearm under § 922(g) qualifies for an enhancement under the ACCA if he has three previous convictions "for a violent felony ... committed on occasions different from one another." 18 U.S.C. § 924(e)(1). As relevant, the statute defines "violent felony" as any crime that "has as an element the use, attempted use, or threatened use of physical force" against another, or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Here, the district court found that Mr. Lee had at least three prior convictions – namely, for burglary, escape, and injury to a child – that qualified as violent felonies under the terms of the ACCA. Mr. Lee concedes that his burglary offense falls within the statute's ambit, but he argues that his escape offense does not qualify as a violent felony and that his two convictions for injury to a child should be counted as a single offense because they were committed on the same occasion, 18 U.S.C. § 924(e)(1). The district court rejected similar arguments and we review this legal determination *de novo*. *United States v. Gordon*, 557 F.3d 623, 624 (8th Cir. 2009).

Mr. Lee was convicted in Illinois state court for the felony of escape pursuant to 720 Ill. Comp. Stat. § 5/31-6. Both the information charging Mr. Lee and his judgment of conviction refer generally to the statute, which describes several types of escape. As we observed in *United States v. Parks*, No. 09-2791, 2010 WL 3463406, at *2 (8th Cir. Sept. 7, 2010), however, the Illinois escape statute separates the prohibited behavior into "discrete subparts," making it "easy" for a court to distinguish

between the statute's covered offenses. For example, § 5/31-6(a) punishes both an escape from custody and a failure to report, but the statute distinguishes between the two by "plac[ing] the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness." *United States v. Chambers*, 129 S. Ct. 687, 691 (2009).

Both the information and the relevant judgment identify Mr. Lee's crime as a class 2 felony. None of the statute's class 2 felonies requires "as an element the use, attempted use, or threatened use of physical force" against another, 18 U.S.C. § 924(e)(2)(B)(i). Nor is escape a crime specifically listed in § 924(e)(2)(B)(ii). Therefore, Mr. Lee's crime of escape is a "violent felony" only if it "otherwise involves conduct that presents a serious potential risk of physical injury to another," *id.* To satisfy this standard, the escape offense must be both "roughly similar, in kind as well as in degree of risk posed" to the crimes listed in the ACCA, *United States v. Begay*, 553 U.S. 137, 143 (2008), and must "typically involve[ ] conduct that is similarly purposeful, violent and aggressive" as compared to the closest analogue among the statute's specified offenses. *Gordon*, 557 F.3d at 625; *see also Begay,* 553 U.S. at 144-45. To determine whether these conditions are met, we first look at the offense of conviction on a categorical basis, examining its facial elements, not the facts underlying the conviction. *Begay*, 553 U.S. at 141. If the statute on its face prohibits both conduct that does and does not qualify as a violent felony under the ACCA, we refer to documents such as charging papers, terms of a plea agreement, or jury instructions to make our determination. *United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir. 2009) (internal quotation marks and citation omitted).

Before the Supreme Court decided *Chambers*, we had held that all escapes were crimes of violence. *Pearson*, 553 F.3d at 1185. *Chambers*, 129 S. Ct. at 691, however, held that an escape "characterized by a failure to present oneself for detention on a specified occasion" is not a violent felony under the ACCA. We interpreted this decision as overruling our precedent that "all escapes – including

failures to return or report to custody – are crimes of violence, but leav[ing] intact our precedent holding that escape from custody is a crime of violence." *Pearson*, 553 F.3d at 1186. When an inmate escapes from a secure facility that is guarded by someone with custodial responsibility to keep offenders confined, we have held that the inmate "engages in purposeful, violent, and aggressive behavior" that creates the sort of "substantial risk of violent confrontation" that satisfies the ACCA. *Parks*, 2010 WL 3463406, at *4 (emphasis omitted).

Each of the class 2 felonies that appear in § 5/31-6 constitutes an escape from custody. *See* 720 Ill. Comp. Stat. § 5/31-6(a), (b-1), (c), (c-5). Because we have held that all escapes from custody are violent felonies, *see Pearson*, 553 F.3d at 1186, we need not refer to any additional documents to determine that Mr. Lee's escape is a violent felony under the ACCA. But even if we were to look at the underlying documents here, they provide no support for Mr. Lee's argument. The document imposing the sentence states that Mr. Lee "intentionally escaped from a penal institution, that being the Rock County Jail." A jail is quite obviously the type of "secured and guarded facility" that we identified as being a place from which an escape creates a risk of violent confrontation. *See Parks*, 2010 WL 3463406, at *4. So Mr. Lee's conviction for escape quite plainly qualifies as a violent felony under that standard as well.

While Mr. Lee also argues that his two convictions for injury to a child should not be counted as separate offenses, he has never disputed that at least one of them qualifies as a violent felony under the ACCA. We find no reason to conclude otherwise, and, since we have already decided that Mr. Lee's convictions for burglary and for escape satisfy the statutory definitions, his contention is irrelevant. Mr. Lee was convicted of three prior violent felony offenses that satisfy the requirements of the ACCA, and thus he is an armed career criminal.

## II.

After correctly establishing Mr. Lee's base offense level under the sentencing guidelines, the district court held that Mr. Lee was eligible for six sentencing enhancements that raised his offense level from 26 to 43, yielding a guidelines sentence of life imprisonment. The conduct that supported the enhancements had to do with the number of firearms that Mr. Lee had possessed, whether he had attempted to sell the firearms, his use of the firearms in a robbery of a local hotel, and his role in planning and carrying out that robbery. Mr. Lee did not admit to any of this conduct, but the district court, based on unchallenged factual assertions in the pre-sentencing report and evidence presented at sentencing, found by a preponderance of the evidence that the conduct had occurred.

Mr. Lee contends that the district court violated his Fifth Amendment right to due process by not imposing a higher burden of proof on the government. He argues that the enhancements had a disproportionate impact on his sentence, and so their applicability required, at a minimum, clear and convincing evidence. The district court rejected a similar argument at sentencing and we review its decision *de novo*. *United States v. Howell*, 606 F.3d 960, 963 (8th Cir. 2010).

Mr. Lee's argument on this issue relies heavily on dicta from our decision in *United States v. Townley*, 929 F.2d 365 (8th Cir. 1991), where we said that we "[did] not foreclose the possibility that in an exceptional case" a clear-and-convincing evidentiary standard might apply, because due process might require such a standard when a sentencing enhancement became " 'a tail which wags the dog of the substantive offense.' " *Id. at* 369 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)). But Mr. Lee's argument that his is *Townley*'s "exceptional case" overlooks the fact that after *Townley* we decided squarely that due process never requires applying more than a preponderance-of-the-evidence standard for finding sentencing facts, even where the fact-finding has "an extremely disproportionate impact on the

defendant's advisory guidelines range." *United States v. Villareal-Amarillas*, 562 F.3d 892, 897 (8th Cir. 2009). The argument therefore fails.

We reject as well Mr. Lee's related contention that the district court violated his Sixth Amendment right to a jury trial because the conduct that supported the enhancements formed the basis for a state criminal charge for which Mr. Lee had not been tried. No doubt, Mr. Lee has a right to a jury trial on his charge in the state court. But it is not a violation of the Sixth Amendment for a sentencing court to base its sentence on facts that it finds to be true just because they may later be used to support a conviction in a state court. And so long as factual findings do not increase a defendant's sentence beyond the penalty authorized for the offense of conviction, there is no Sixth Amendment right to have a jury determine those facts. *United States v. Booker*, 543 U.S. 220, 244 (2005). Here, § 924(e) authorizes a life sentence for the offense to which Mr. Lee pleaded guilty, so his argument is without merit.

III.

Mr. Lee contests the district court's refusal to award him any points for acceptance of responsibility in calculating the guidelines range. Under § 3E1.1 of the sentencing guidelines, an offender is entitled to receive a 2-point deduction if he "clearly demonstrates acceptance of responsibility for his offense," and another 1-point deduction if the government submits a motion asserting that the offender "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying [them] of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1. At sentencing, Mr. Lee argued that he should receive the full 3-point reduction because he had assisted in the government's investigation and timely entered his guilty plea. But the district court gave him no points because he had frivolously contested relevant conduct at sentencing and had falsely denied it in his allocution. In reviewing the district court's denial, we recognize that "the district court is in a unique position to evaluate a defendant's acceptance of responsibility," *United States v. Searcy*, 233 F.3d 1096, 1102 (8th Cir. 2000), and its decision "is entitled to great deference and

-6-

should be reversed only if it is so clearly erroneous as to be without foundation," *United States v. Winters*, 416 F.3d 856, 860 (8th Cir. 2005).

A defendant who enters a guilty plea is not entitled to credit for acceptance of responsibility as a matter of right. *Id.*; *see also* U.S.S.G. § 3E1.1, cmt. n.3. Rather, a district court must determine whether a downward offense level adjustment is warranted by taking into account "appropriate considerations," such as those listed in the commentary to § 3E1.1. U.S.S.G. § 3E1.1, cmt, n.1. According to this commentary, a plea of guilty combined with truthful admissions concerning the offense of conviction and any relevant conduct is "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. Furthermore, a defendant may remain silent with respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction. U.S.S.G. § 3E1.1 cmt. n.1(a). But where a defendant "falsely denies, or frivolously contests, relevant conduct that the court determines to be true," a district court should find that the defendant "has acted in a manner inconsistent with acceptance of responsibility." *Id.*

The district court heard testimony and reviewed affidavits from witnesses that Mr. Lee offered during the sentencing hearing. The substance of this evidence concerned whether Mr. Lee's co-defendant, Brandon Vance, was attempting to implicate Mr. Lee falsely in much of the relevant conduct that led to his sentencing enhancements. One of Mr. Lee's witnesses, a private investigator, testified that an inmate claimed that Mr. Vance and his mother, Melody Vance, had tried to hire him to frame Mr. Lee. As proof, the investigator offered the fact that Ms. Vance had deposited $20 in the inmate's prison account as a purported initial payment for his services. The investigator also submitted an affidavit from a second inmate who stated that Mr. Vance had told him that the hotel robbery was his idea so he could get some money to pay off his personal debts.

To rebut these allegations, the government called Ms. Vance to the stand. She admitted to depositing the money into the prison account, but she testified that she put it there so her son could access it without having it garnished. The government then called a special agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and a detective from the Coralville, Iowa, Police Department to testify about Mr. Lee's significant involvement in the relevant conduct. These witnesses also recounted interviews that they had conducted with Mr. Lee during which he had admitted to his role in selling the stolen firearms and committing the hotel robbery.

After hearing this evidence, the district court found that the testimony that Mr. Lee's witnesses provided was incredible and contrary to credible testimony offered by the government's witnesses. The court then denied Mr. Lee acceptance of responsibility, stating specifically that:

> Certainly, on the issue of acceptance of responsibility, a defendant has a right to raise claims and argue legal issues without losing acceptance of responsibility, but what cannot be done is for the defendant to present himself or to sponsor false information, asking the court to rely on it, and that's what has happened here.

The court further noted that, in making its decision, it also considered statements by Mr. Lee that indicated that he had not accepted responsibility and continued to blame everyone else. In particular, the court referred to Mr. Lee's allocution, in which he stated that he was a scapegoat, that there was no evidence linking him to any of the stolen firearms, and that the ATF agent who had testified for the government had perjured himself and should have to take a lie detector test. In addition, the court referred to the hearing evidence that the private investigator offered as frivolous.

We can find no clear error in the district court's decision to deny Mr. Lee credit for acceptance of responsibility. The district court based its decision largely on a determination that the evidence that Mr. Lee offered was both incredible and frivolous

and that he had made false statements during his allocution. A "finding based on the credibility of live witnesses can almost never be clearly erroneous," *United States v. E.R.B.*, 86 F.3d 129, 130 (8th Cir. 1996), and particularly cannot be so here where the evidence that Mr. Lee presented and his own statements were wholly rebutted by evidence offered by the government that the district court found to be credible.

Mr. Lee also contends that he was denied his Fifth Amendment right to due process because the district court's ruling effectively prohibited him from proving that he was entitled to credit for assuming responsibility. But the district court expressly adverted to Mr. Lee's right to "raise claims and argue legal issues" and to present evidence in support of them. What Mr. Lee does not have a constitutional right to do is to advance frivolous evidence and make false statements, and the district court, on an ample record, found that he did just that. Mr. Lee received all the constitutional process that he was due.

IV.

Mr. Lee argues finally that the district court's imposition of life imprisonment constitutes cruel and unusual punishment under the Eighth Amendment. In doing so, he attacks both the court's calculated sentence under the sentencing guidelines and its alternative sentence, which was the same (the court said at sentencing that even if its guidelines-range calculation was determined to be wrong, it would impose the sentence of life imprisonment). Mr. Lee contends that the severity of the sentence is grossly disproportionate to the gravity of his criminal offenses and showed the district court's inherent misapprehension of the sentencing factors enumerated in 18 U.S.C. § 3553(a). We review this issue *de novo*. *United States v. Wiest*, 596 F.3d 906, 911 (8th Cir. 2010), *cert. denied*, No. 10-5724, 2010 WL 3073798 (U.S. Oct. 4, 2010).

The Eighth Amendment prohibits punishment that is "grossly disproportionate" to the offense of conviction. *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008) (internal quotation marks and citations omitted). Although this "narrow

proportionality principle" applies to all criminal sentences, it is "exceedingly rare" for a noncapital sentence to violate the Eighth Amendment. *Id.*

To determine whether a sentence is grossly disproportionate, we examine " 'the gravity of the offense compared to the harshness of the penalty.' " *Paton*, 535 F.3d at 837 (quoting *Ewing v. California*, 538 U.S. 11, 28 (2003)). In weighing these matters, we consider the "harm caused or threatened to the victim or to society, and the culpability and degree of the defendant's involvement." *Weist*, 596 F.3d at 911-12. We also consider a defendant's history of felony recidivism, if there is one. *Paton*, 535 F.3d at 837 (citing *Ewing*, 538 U.S. at 29).

Here, Mr. Lee contends that his sentence is unconstitutional because a typical sentence for the offenses to which he pleaded guilty is ten years' imprisonment. In making this argument, though, Mr. Lee passes over the crucial point that the district court was not just sentencing him for his two firearms offenses. Rather, by committing these crimes and pleading guilty, Mr. Lee subjected himself to being sentenced under a federal recidivism statute – the ACCA – and corresponding recidivism sections of the advisory sentencing guidelines – particularly § 4B1.4. The statute required that Mr. Lee serve a minimum of fifteen years, *see* 18 U.S.C. § 924(e)(1), and, with applicable enhancements, the guidelines recommended an advisory sentence of life imprisonment, a sentence within the statutory limits.

We find, moreover, that the harm caused or threatened by Mr. Lee's crimes and his significant degree of involvement and culpability in those offenses weigh in favor of the sentence that he received. *See Weist*, 596 F.3d at 911-12. The district court found, based on sufficient evidence, that Mr. Lee had stolen and possessed between 8 and 24 firearms, one of which was a semiautomatic weapon capable of accepting large-capacity ammunition magazines. He then arranged for the sale of some of these weapons to a person he knew was a drug dealer and felon, and he used the remaining weapons as part of the armed robbery at a local hotel. Mr. Lee played a significant

role in that robbery, as the idea originated with him, he performed the initial scouting and planning, and he directed two co-offenders, one of whom was a minor, in the commission of the act. He also tied up a hotel clerk with duct tape. As Mr. Lee points out, he did instruct his co-offenders not to take a laptop that contained the hotel clerk's schoolwork and not to point their weapons directly at the hotel clerk after she had opened the cash drawer. But these small acts of restraint pale in comparison to the blatant disregard for public and personal safety that Mr. Lee demonstrated by stealing the firearms, arranging for their illegal sale, and initiating and committing the armed robbery.

Mr. Lee's criminal history also supports this lengthy sentence. At the time of the firearms offenses at issue here, Mr. Lee had already been convicted of theft (multiple counts), felony escape, second degree burglary (which also involved Mr. Lee fleeing arrest into an elementary school), unlawful discharge of a handgun, and inflicting injury on a child (multiple counts). When Mr. Lee's recent firearm charges are added to this long list of offenses, it is difficult not to conclude that this history "demonstrates an unwillingness or inability to 'conform[ ] to the norms of society as established by its criminal law.' " *Paton*, 535 F.3d at 837 (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)). It also gave the district court good reason to find that a life sentence – based on the sentencing guidelines or not – was appropriate given that Mr. Lee, in the words of the district court, was an "unrepentant recidivist" who had been "treated leniently by the state systems." In the district court's opinion, Mr. Lee's sentence was justified considering the factors in § 3553(a) because he had proven to be a "violent criminal ... [who] needs to be off the street for the protection of the public," and "[t]he only way to deter him [from further endangering the public] is to lock him up." Given Mr. Lee's extensive history of inflicting harm on others and placing the greater public in danger, we find no occasion to disagree.

Quite the opposite. When we consider the seriousness of Mr. Lee's crimes and his criminal history, we hold that this is not "the rare case in which a threshold

comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Ewing*, 538 U.S. at 30 (internal quotation marks and citation omitted). For that reason, we need not consider any contrasts that Mr. Lee attempts to draw between his sentence and others within our circuit or elsewhere. *Id.* While severe, Mr. Lee's sentence falls within the statutory range that Congress provided, *Paton*, 535 F.3d at 838, as well as the recommended guidelines range, and is supported by the district court's proper consideration of the sentencing factors in § 3553(a). Mr. Lee's sentence thus does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

## V.

For the forgoing reasons, we affirm the judgment of the district court.

_____