# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1909
_____

United States of America

*Plaintiff - Appellee*

v.

Raul Valdez Rivas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 14, 2022
Filed: July 8, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Raul Valdez Rivas pled guilty to knowingly attempting to persuade, induce, and entice an individual who had not yet attained the age of 18 years old to engage in sexual activity. See 18 U.S.C. § 2422(b). The district court,[1] imposing the

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

mandatory minimum sentence, sentenced Valdez Rivas to 120 months imprisonment with 5 years supervised release. Valdez Rivas now appeals his sentence, arguing that the imposition of the mandatory minimum violates the Eighth Amendment's prohibition against cruel and unusual punishment. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.

On April 16, 2020, Valdez Rivas called the phone number listed on an advertisement for a male escort on www.skipthegames.com, a website commonly used for prostitution. The advertisement, titled "Tender and Needs Teaching," appeared in the "Male Escort for Men" section of the website and included two photographs of a young male in front of a locker. The advertisement featured an extensive offering of sexual services, as well as the escort's rates ($60 for a "quick visit," $100 for a half-hour, and $140 for an hour). Unbeknownst to Valdez Rivas, this advertisement had been posted by an undercover officer with the Douglas County Sheriff's Office and no such escort in fact existed.

Valdez Rivas's April 16 call went unanswered, so he called again on April 17 and once more on April 25. Those calls also went unanswered. Then, on the evening of April 25, a second undercover officer with the Douglas County Sheriff's Office texted Valdez Rivas, acting as the escort from the advertisement. Valdez Rivas responded the following day, and this text-message conversation stretched over several days, from April 26 to April 29. Although the advertisement had listed the escort as being 19 years old, after Valdez Rivas indicated that he was a "Mexican man," the undercover officer told him, first in English and then again in Spanish, that he was only 15 years old, and Valdez Rivas responded by calling the undercover officer a "little boy." The undercover officer also told Valdez Rivas that he was too young to drive and needed to meet Valdez Rivas while his mother was at work. On April 29, Valdez Rivas asked if the undercover officer's mother was home or if he was available to meet, and Valdez Rivas requested oral sex with the undercover officer in exchange for $25, to which the undercover officer agreed. However, when

Valdez Rivas arrived at the prearranged location, a gas station, to meet the undercover officer, he was instead arrested. The arresting officers searched Valdez Rivas and found in his pocket the cell phone associated with the phone number that had been communicating with the undercover officer, as well as $78.78. The officers took Valdez Rivas into custody, and once in custody, Valdez Rivas waived his Miranda[2] rights. He admitted that he had agreed to pay $25 for oral sex with a male whom he believed to be 15 years old. Valdez Rivas further admitted that he had arrived at the gas station with the expectation of meeting the 15-year-old. However, Valdez Rivas claimed that he would not have actually consummated their oral sex arrangement because he knew that it would be illegal to do so.

A one-count indictment charged Valdez Rivas with knowingly attempting to persuade, induce, and entice an individual who had not yet attained the age of 18 years old to engage in sexual activity. Valdez Rivas pled guilty before a magistrate judge, who issued a report and recommendation that the district court accept the guilty plea and find Valdez Rivas guilty of violating § 2422(b),[3] which the district court adopted. Prior to sentencing, Valdez Rivas filed a motion asking that the district court decline to apply the mandatory minimum sentence of ten years imprisonment; in that motion, Valdez Rivas argued that an automatic application of the mandatory minimum, without consideration of any mitigating evidence, would result in an unconstitutionally excessive sentence that violated the Eighth Amendment. The district court rejected Valdez Rivas's argument, applied the mandatory minimum, and sentenced Valdez Rivas to 120 months imprisonment.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[3]Section 2422(b) provides, in pertinent part:

Whoever . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be . . . imprisoned not less than 10 years or for life.

II.

On appeal, Valdez Rivas reasserts the same argument that he made to the district court: the imposition of the mandatory minimum, without consideration of the mitigating circumstances particular to him, violates the Eighth Amendment. We disagree.

"We review constitutional challenges to a sentence de novo." United States v. Scott, 831 F.3d 1027, 1033 (8th Cir. 2016). The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Supreme Court has understood this provision to 'forbid[ ] only extreme sentences that are "grossly disproportionate" to the crime.'" Scott, 831 F.3d at 1033-34 (citation omitted). "[S]uccessful challenges to the proportionality of particular sentences are exceedingly rare." United States v. Paton, 535 F.3d 829, 837 (8th Cir. 2008) (citation omitted); see also United States v. Wiest, 596 F.3d 906, 911 (8th Cir. 2010) ("It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment.").

When deciding if a defendant's sentence is "grossly disproportionate" to the crime for which he was convicted, this Court relies on Justice Kennedy's analysis in Harmelin v. Michigan, 501 U.S. 957 (1991) (Kennedy, J., concurring in part and concurring in the judgment). See Henderson v. Norris, 258 F.3d 706, 709 (8th Cir. 2001). Our proportionality analysis is informed by principles including "the primacy of the legislature, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that proportionality review be guided by objective factors," which support "the final principle that the 'Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.'" Wiest, 596 F.3d at 911 (quoting Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment)). We therefore must engage in the following analysis:

> [W]e first compare the gravity of the offense committed to the harshness of the penalty imposed. To evaluate the severity of a crime, we consider the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant. In considering the culpability of the defendant, the court may look to the defendant's intent and motive in committing the crime.

Henderson, 258 F.3d at 709; see also Harmelin, 501 U.S. at 1001-02 (Kennedy, J., concurring in part and concurring in the judgment). Then, "[i]n the 'rare case' that the threshold comparison 'leads to an inference of gross disproportionality,' we are then directed to perform a comparative analysis of the defendant's sentence with sentences received by other offenders in the same jurisdiction and other jurisdictions." Scott, 831 F.3d at 1034 (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment)).

The fact that Valdez Rivas is challenging a statutory mandatory sentence as applied to him does not change the analysis. In Harmelin, which involved a mandatory life sentence, the Supreme Court observed that "[s]evere, mandatory penalties . . . hav[e] been employed in various forms throughout our Nation's history. . . . There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" 501 U.S. at 994-95 (citation omitted). "It is beyond question that the legislature 'has the power to define criminal punishments without giving the courts any sentencing discretion.'" Id. at 1006 (Kennedy, J., concurring in part and concurring in the judgment) (citation omitted). We agree with the Eleventh Circuit that, as applied to this case, the decision in Harmelin "means a [ten]-year sentence mandatorily imposed for violation of § [2422(b)] is to be viewed the same as if it were a [ten]-year sentence chosen by a judge in the exercise of [his] sentencing discretion." United States v. Farley, 607 F.3d 1294, 1339 (11th Cir. 2010).

Valdez Rivas's conviction required that he be "imprisoned not less than 10 years." 18 U.S.C. § 2422(b). He argues that this is grossly disproportionate to the offense committed because he was at all times talking with an undercover officer, so

there was not an "actual victim." Valdez Rivas also highlights the same mitigating evidence that he emphasized to the district court, such as the fact that he had no prior convictions and no prior pedophilic inclinations, though we note that the latter fact cannot be proven. However, the fact that Valdez Rivas did not actually speak to a 15-year-old and has not before been convicted of a sex offense does not negate the gravity of his conduct here.

Even accepting Valdez Rivas's argument that there was no "actual victim," in evaluating the gravity of his crime, we also consider the harm threatened to society. See Henderson, 258 F.3d at 709. Valdez Rivas responded to an advertisement that was both sexually explicit and suggestive of the fact that the escort was underage. Further, Valdez Rivas was persistent in his pursuit of the undercover officer despite the fact that his first three calls went unanswered, the undercover officer twice told him, in both English and Spanish, that he was speaking with a 15-year-old, and the undercover officer told him that a meeting could occur only when the undercover officer's mother was not home. In fact, Valdez Rivas responded affirmatively to the undercover officer's admission that he was only 15 years old by calling the undercover officer a "little boy." Additionally, it was Valdez Rivas, not the undercover officer, who requested to engage in oral sex. This sort of pursuit of a child for sex is precisely the type of conduct that the statute is aimed at preventing. See George W. Bush, President Signs H.R. 4472, The Adam Walsh Child Protection & Safety Act of 2006, 2006 WL 2076691, at *2 (July 27, 2006) (explaining that purpose of statute is to "increase federal penalties for crimes against children," "impose[ ] tough mandatory minimum penalties for the most serious crimes against our children," and "make it harder for sex predators to reach our children on the Internet"); see also Harmelin, 501 U.S. at 998 (Kennedy, J., concurring in part and concurring in the judgment) ("[T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" (citation omitted)).

Further, this persistence, in addition to Valdez Rivas's post-Miranda admissions, is illustrative of his level of culpability. See Henderson, 258 F.3d at

709. In his post-Miranda interview, Valdez Rivas admitted that he thought, at all times, that he was communicating with a 15-year-old and, when arriving at the prearranged location, thought that he was meeting a 15-year-old. Although he claimed that he would not have gone through with the oral sex arrangement, he in fact arrived at the location with $78.78 in his pocket, which we note was sufficient to satisfy the $25 price for oral sex.

Ultimately, the facts in this case show that Valdez Rivas intentionally engaged in conduct that is both dangerous to and exploitive of children, which is precisely the sort of conduct contemplated and targeted by Valdez Rivas's statute of conviction. These facts do not support an inference of gross disproportionality, and therefore, our analysis concludes here. See Scott, 831 F.3d at 1034. And, in concluding that § 2422(b)'s mandatory minimum does not violate the Eighth Amendment's prohibition against "grossly disproportionate" sentences, we are joining several circuits that have previously considered this argument and have also found that the statute does not violate the Eighth Amendment. See, e.g., United States v. Butters, 267 F. App'x 773, 778 (10th Cir. 2008) ("A ten-year term accurately reflects the serious nature of the offense and is not 'inconsistent with other state and federal guidelines for child sex crimes.'" (citation omitted)); United States v. Nagel, 559 F.3d 756, 762 (7th Cir. 2009) ("[W]e now hold that the ten-year mandatory minimum sentence provision in § 2422(b) is not grossly disproportionate to the crime of attempting to entice a minor to engage in a criminal sexual act and therefore does not violate the Eighth Amendment's prohibition of cruel and unusual punishment."); United States v. Dobrowolski, 406 F. App'x 11, 13 (6th Cir. 2010) (per curiam) ("[W]e conclude that this is not one of those exceedingly rare cases in which the crime is so grossly disproportionate to the sentence as to constitute a violation of the Eighth Amendment."). Therefore, finding no constitutional violation, we affirm Valdez Rivas's sentence.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____