# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1477

———————————————

United States of America

*Plaintiff - Appellee*

v.

Terreall McDaniel

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: February 14, 2019
Filed: May 30, 2019

——————————

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

——————————

BENTON, Circuit Judge.

After a bench trial, Terreall A. McDaniel was convicted of possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D) and 851; possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (C)(i); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The

district court[1] sentenced him to 622 months' imprisonment. He appeals the conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

McDaniel believes the district court erred in admitting expert testimony without a *Daubert* hearing. This court reviews the "decision to admit expert testimony for abuse of discretion, giving substantial deference to the district court." ***David E. Watson, P.C. v. United States***, 668 F.3d 1008, 1014 (8th Cir. 2012). "The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." ***In re Zurn Pex Plumbing Prods. Liab. Litig.***, 644 F.3d 604, 613 (8th Cir. 2011). There is "less need" for this "gatekeeping function" in bench trials. ***Id.*** *See Watson*, 668 F.3d at 1015 (same). In fact, "[t]here is no requirement that the [d]istrict [c]ourt always hold a *Daubert* hearing prior to qualifying an expert witness under Federal Rule of Evidence 702." ***United States v. Geddes***, 844 F.3d 983, 991 (8th Cir. 2017) (alterations in original).

At trial, the government sought to introduce the expert testimony of Kansas City, Missouri Police Officer Detective Don Stanze. He testified generally that quantity and packaging indicate whether drugs are intended for personal use or trafficking. He opined that in this case, the cocaine was "individually packaged for sale," the ecstacy pills were intended for sale, and the marijuana "well exceeds what anybody would possess for the purpose of use." He also testified generally: (1) "drug scales, other packaging, firearms, U.S. currency, [and] cell phones" are "tools of the trade" for "drug distribution;" (2) dealers often package drugs in "ready-for-sale"

---

[1]The Honorable Roseann Ketchmark, United States District Judge for the Western District of Missouri.

baggies; (3) dealers use firearms to protect their drugs and money; and (4) dealers often use borrowed vehicles and aliases to avoid law enforcement detection.

McDaniel asserts the court improperly relied on Detective Stanze's testimony because it lacked "scientific method." But Federal Rule of Evidence 702 does not require this. Rather, it allows testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." **Fed. R. Evid. 702(a).** Detective Stanze had knowledge, skill, experience, and training sufficient to qualify him as an expert in drug trafficking. *See **Adams v. Toyota Motor Corp.**,* 867 F.3d 903, 916 (8th Cir. 2017) (noting that an expert opinion "need not be a scientific absolute in order to be admissible" (internal quotation marks omitted)). During his 22 years in law enforcement, he made over 500 drug purchases (both user and dealer quantities); executed over 200 search warrants; participated in over 100 drug interviews or proffers; received ongoing training about drug trafficking; and taught at the regional academy on "drugs, narcotics, and narcotics trends in the Kansas City area." Significantly, he has testified as a drug-trafficking expert in federal court about 25 times. "[T]he district court did not abuse its discretion in permitting the testimony, which was based on the specialist's experience and training." **United States v. Carter**, 205 F.3d 1348, at *2 (8th Cir. 1999). *See **Geddes**,* 844 F.3d at 991 (holding no abuse of discretion in "the district court's decision not to hold a *Daubert* hearing" and to allow a member of a human-trafficking task force with 14 years of experience to testify "on the operation of sex trafficking rings and the terms used therein"); **United States v. Evans**, 272 F.3d 1069, 1094 (8th Cir. 2001) ("There is no requirement that the District Court always hold a *Daubert* hearing prior to qualifying an expert witness under Federal Rule of Evidence 702, and the Court did not abuse its discretion in finding the proposed testimony of Sergeant Schmidt to be both reliable and relevant, and in allowing that testimony.").

II.

McDaniel contends the district court erred in denying his motions for judgment of acquittal because the evidence was insufficient to convict on: Count Two—possession of a firearm (a Smith & Wesson) in furtherance of a drug-trafficking crime (possession with intent to distribute cocaine); Count Three—felon in possession of a firearm (a Smith & Wesson); and Count Five—possession of a firearm (a Walther) in furtherance of a drug-trafficking crime (possession with intent to distribute cocaine and marijuana). This court reviews "the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt." *United States v. Iqbal*, 869 F.3d 627, 629-30 (8th Cir. 2017).

On Counts Two and Three, McDaniel believes the evidence was insufficient to show that the Smith & Wesson was a "firearm" under 18 U.S.C. § 921(a)(3)(A)[2] because it was destroyed before trial. This belief is without merit. The government introduced the following evidence to show the Smith & Wesson was a firearm under § 921(a)(3)(A): (1) eyewitness testimony from Trooper Aaron Engelhart—the Missouri State Highway Patrol Trooper who seized the Smith & Wesson—opining that it was a "firearm," loaded with live ammunition; (2) photographs of the Smith & Wesson (including its serial number); (3) dash cam footage with statements from McDaniel that, "They're about to find the gun and shit;" and (4) the opinion of ATF Special Agent Matthew Wilson that, based on pictures and a description, the object was a "firearm." This was sufficient to show the Smith & Wesson was a firearm as defined in § 921(a)(3)(A). *See United States v. Dobbs*, 449 F.3d 904, 911 (8th Cir. 2006) ("[W]ithout a firearm in evidence and without expert opinions based on

---

[2]The statute defines a "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. . . ." **18 U.S.C. § 921(a)(3)(A)**.

analysis of the firearm, lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm under § 921(a)(3)(A)."). *See also United States v. Davis*, 668 F.3d 576, 577 (8th Cir. 2012) (holding that this court has "consistently held that proof the firearm was operable is not required because the plain language of § 921(a)(3) requires only that the weapon . . . is designed to . . . expel a projectile by the action of an explosive" (internal quotation marks omitted)).

On Counts Two and Five, McDaniel believes the evidence was insufficient to show a nexus between possession of the firearm and the drug-trafficking crimes. This belief also is without merit. "To establish that a defendant possessed a firearm in violation of § 924(c), the Government must prove that (1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime." *United States v. Robinson*, 617 F.3d 984, 988 (8th Cir. 2010) (internal quotation marks omitted). "To satisfy the 'in furtherance of' element, of § 924(c), the government must present evidence from which a reasonable [trier of fact] could find . . . [the] possession had the effect of furthering, advancing or helping forward the drug crime." *Id.* (some internal quotation marks omitted).

On Count Two, the government introduced evidence establishing a nexus between McDaniel's possession of the Smith & Wesson and possession with intent to distribute cocaine: (1) he was the driver and sole occupant of the PT Cruiser where Trooper Engelhart found 22 baggies of cocaine, marijuana, two digital scales, and a loaded Smith & Wesson; and (2) the dash cam recorded him saying "It's over for me" and "They're about to find the gun and shit." On Count Five, the government introduced evidence establishing a nexus between possession of the Walther and possession with intent to distribute cocaine and marijuana: (1) he was the driver and sole occupant of a Hyundai Tiburon that fled from officers at high speeds before crashing on the side of a road; (2) after crashing, he attempted to flee the scene on foot; (3) when caught, he gave a false name; and (4) and a search of the Tiburon revealed 10 individually wrapped bags of cocaine, 11 bags "containing colorful pills," a grinder, an electronic scale, over 1,000 grams of marijuana, and a loaded Walther.

This evidence was sufficient to support the convictions. *See **United States v. McDaniel***, 838 F.3d 955, 957 (8th Cir. 2016) ("A jury may infer the requisite nexus if the firearm is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." (internal quotation marks omitted)).

III.

McDaniel argues the district court erred in sentencing him as an armed career criminal under 18 U.S.C. § 924(e) because "[t]he government failed to demonstrate that two of the predicate convictions relied on by the district court were 'committed on occasions different from one another.'" The ACCA enhances sentences for defendants convicted under 18 U.S.C. § 922(g) if they have "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." **18 U.S.C. § 924(e)(1)**. A "serious drug offense" is defined in part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." **18 U.S.C. § 924(e)(2)(A)(ii)**. "Predicate offenses under the ACCA are limited to those 'committed on occasions different from one another.'" ***United States v. Van***, 543 F.3d 963, 966 (8th Cir. 2008), *quoting* **18 U.S.C. § 924(e)(1)**. This court has "repeatedly held that convictions for separate drug transactions on separate days are multiple ACCA predicate offenses, even if the transactions were sales to the same victim or informant." ***Id.*** This court reviews "de novo the district court's legal determination that the prior convictions serve as predicate offenses under the ACCA." ***United States v. Alexander***, 809 F.3d 1029, 1031 (8th Cir. 2016).

The district court enhanced McDaniel's sentence based on one indictment listing three convictions for selling cocaine in violation of § 195.211 RSMo. At sentencing, the government admitted a certified copy of the judgment from the case

(Jackson County, Missouri, Circuit Court, Case No. 16-CR-02-004846).  The parties agree the judgment states that both Counts I and II occurred on January 24, 2002.  However, the government also admitted a certified copy of the information in the case.  It included a handwritten amendment to the offense date of Count II.  As amended, the information charged McDaniel with three counts of violating § 195.211 RSMo, occurring on three separate dates: January 24, 2002, January 28, 2002, and February 4, 2002.  To clarify the discrepancy between the information and the judgment, the government introduced a certified copy of the guilty plea transcript.  It shows that the parties discussed and McDaniel agreed that the correct date for Count II was January 28, 2002.

>MR. SUROFF:  Judge, I think for Count II the information needs to be amended to reflect an occurrence date of January 28th of 2002.
>
>. . . .
>
>THE COURT:  Because they both say the 24th.  Is that it?
>
>MR. SUROFF:  And the discovery shows that it was on the 28th for Count II.
>
>MR. KNIGHT:  That's right, Your Honor.
>
>THE COURT:  All right.  The information will be amended to reflect that fact.
>
>MR. KNIGHT: Thank you, Judge.
>
>THE COURT:  So four days later on January 28th, did you sell crack cocaine again?
>
>DEFENDANT McDANIEL: Yes.

McDaniel argues the plea transcript does not prove he was convicted of Count II on January 28th, rather than the 24th, because "it contradicts the most critical

-7-

document: the judgment itself.'" "In determining whether a plea necessarily rested on facts that qualify the conviction for an enhancement, the court may refer to the 'terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.'" *United States v. Benitez-De Los Santos*, 650 F.3d 1157, 1159 (8th Cir. 2011) (emphasis omitted), *quoting Shepard v. United States*, 544 U.S. 13, 26 (2005). Contrary to McDaniel's assertion that the record is "riddled with ambiguity," these *Shepard* documents—the information and plea transcript—show that McDaniel was convicted of three violations of § 195.211 RSMo, occurring on three separate occasions. *See United States v. Span*, 789 F.3d 320, 327 (4th Cir. 2015) ("Discrepancies in these records, such as different dates of the same offense, do not upend the trial court's sound conclusion when there is additional evidence to indicate the erroneous date is likely a scrivener's error." (internal quotation marks omitted)).

For the first time on appeal, McDaniel argues his convictions are not for "serious drug offenses." As he concedes, this court "rejected a similar argument regarding Mo. Rev. Stat. § 195.211" in *United States v. Thomas*, 886 F.3d 1274, 1276 (8th Cir. 2018). There, this court held that a Missouri conviction for the sale or delivery of a controlled substance under § 195.211 RSMo was a "controlled substance offense" under the career offender guideline. *Thomas*, 886 F.3d at 1276. *See* **U.S.S.G. § 4B1.2(b)**. McDaniel was sentenced under the ACCA based on three convictions for a "serious drug offense." The definition of "controlled substance offense" under the career offender guideline and "serious drug offense" under the ACCA are not identical. *Compare* **U.S.S.G. § 4B1.2(b)** (defining a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense"), *with* **18 U.S.C. § 924(e)(2)(A)(ii)** (defining a "serious drug offense" as "an offense under State law,

involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law"). But both prohibit distributing or possessing with intent to distribute a controlled substance. And, as this court has held, § 195.211 RSMo prohibits the distribution of a controlled substance, which includes the "offer therefor." *United States v. Hill*, 912 F.3d 1135, 1136 (8th Cir. 2019) (noting that § 195.211 RSMo criminalizes "the distribution, delivery, manufacture, or production of a controlled substance" and "'[d]elivery' includes both the sale of a controlled substance and the 'offer therefor'"). The district court did not err in enhancing McDaniel's sentence based on three convictions for violations of § 195.211 RSMo.[3] *Id.* (affirming an ACCA sentence based on § 195.211 RSMo convictions because "the district court properly counted Hill's convictions under a Missouri statute that forbade an offer to sell controlled substances").

## IV.

McDaniel maintains his 622-month sentence—262 months on Counts One, Three, Four, and Six, to run consecutively to 60 months on Count Two and 300 months on Count Five—is grossly disproportionate under the Eighth Amendment. This court reviews de novo. *United States v. Sorensen*, 893 F.3d 1060, 1067 (8th Cir. 2018).

The Eighth Amendment prohibits "cruel and unusual punishments." **U.S. Const. amend. VIII**. It forbids "extreme sentences that are grossly disproportionate to the crime." *United States v. Hager*, 609 Fed. Appx. 355, 359 (8th Cir. 2015). The consecutive part of McDaniel's sentence is mandated by 18 U.S.C. § 924(c), and "it

---

[3]In his initial brief, McDaniel argued that the district court erred in sentencing him "as a Career Offender under U.S.S.G. § 4B1.1." However, in his reply, he "agrees with the government that the dispositive issue on appeal is whether defendant was improperly sentenced as an ACCA offender, as opposed to a Career Offender under the Guidelines."

is not subject to reasonableness analysis." ***United States v. Scott***, 831 F.3d 1027, 1035 (8th Cir. 2016) (upholding a term of 768 months' imprisonment under 18 U.S.C. § 924(c)). Additionally, "[n]o circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment." ***United States v. Wiest***, 596 F.3d 906, 912 (8th Cir. 2010). *See, e.g.*, ***United States v. Walker***, 473 F.3d 71, 79-84 (3d Cir. 2007) (upholding a 55-year mandatory consecutive sentence for three violations of use of a firearm during a crime of violence); ***United States v. Angelos***, 433 F.3d 738, 750-53 (10th Cir. 2006) (upholding a 55-year mandatory sentence for three violations of § 924(c)). McDaniel "concedes that the existing framework of binding case law makes this [i]ssue difficult, if not impossible, to succeed on the merits." He is correct. The sentence does not violate the Eighth Amendment.

\* \* \* \* \* \* \*

The judgment is affirmed.

STRAS, Circuit Judge, concurring.

I concur in the court's opinion, but I write separately to once again question why we allow judges, rather than juries, to determine whether offenses were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1); *see also United States v. Perry*, 908 F.3d 1126, 1134–36 (8th Cir. 2018) (Stras, J., concurring). The resolution of this issue can trigger a lengthy mandatory-minimum sentence, yet we continue to treat it as if it were just another sentencing fact—or possibly even a question of law, *see United States v. Humphrey*, 759 F.3d 909, 911–12 (8th Cir. 2014) (reviewing the different-occasions question de novo). This shortchanges criminal defendants, whose Sixth Amendment jury-trial rights are undermined every time a judge unilaterally decides not to pass the question on to a jury.

As I have said before, the law is simple. *See Perry*, 908 F.3d at 1134. The Supreme Court has repeatedly told us that "any fact that increases the penalty for a

-10-

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 117 (2013). To be sure, there is an exception that allows courts to find "the fact of a prior conviction." *Apprendi*, 530 U.S. at 490. But this exception is exceedingly narrow, limited to "determin[ing] what crime, with what elements, the defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). "That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Id.*

Yet we allow district courts to do more—indeed, much more—and find any "recidivism-related fact[]," including whether prior offenses were committed on different occasions. *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015). Sometimes this is easy, when crimes were committed years apart, perhaps even in different parts of the country. Other times, the question is close. This is one of those cases. But in every case, regardless of whether the resolution is easy or hard, criminal defendants are entitled to a jury determination of a fact that can expose them to a longer mandatory prison term. *See Alleyne*, 570 U.S. at 117. *Compare* 18 U.S.C. § 924(a)(2) (default 10-year statutory maximum), *with id.* § 924(e)(1) (15-year statutory minimum for armed career criminals).

The unique facts of this case highlight just how troublesome our approach can be. The facts here are, at best, confusing, largely because the documents on which we have come to rely openly conflict with one another. *See generally Shepard v. United States*, 544 U.S. 13, 20–21 (2005). The charging document, for example, originally indicated that two of McDaniel's three crimes occurred on the same day. But at some point someone with access to the document—we do not know who—made a handwritten amendment specifying that the three crimes were committed on three different dates. A transcript of the state-court proceedings likewise reflects an agreement between McDaniel, his lawyer, and the prosecutor that the offenses occurred on separate dates. Yet the final judgment of conviction, which

presumably postdates everything else, says that two of the three crimes occurred on the same day.  What we have here, in other words, is a good ol' fashioned factual dispute.

In resolving it, the district court did what a jury would have done.  It reviewed the conflicting records, listened to the arguments of counsel, and then decided when the offenses occurred, based largely on its view that the "verbatim transcript of the colloquy" was "most persua[sive]."  Resolving this type of factual dispute, however, is a long way from the narrow power to decide "what crime . . . [McDaniel] was convicted of." *Mathis*, 136 S. Ct. at 2252 (emphasis added).

To be sure, McDaniel waived his right to a jury trial.  But our precedents would have required the same approach even if he had not.  So even though McDaniel himself might not have been deprived of his Sixth Amendment rights,[4] others have been and, if nothing changes, will continue to be.

-----

[4]It is also possible that the manner in which the district court resolved the different-occasions question violated the Fifth Amendment requirement that the government prove "all elements of the offense charged . . . beyond a reasonable doubt." *Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993) (internal quotation marks and citations omitted); *see also Alleyne*, 570 U.S. at 117 (explaining that an "element" is something that "increase[s] the penalty to which the defendant [is] subjected"); *cf. Apprendi*, 530 U.S. at 490.  But because no one raises this issue, I leave it for another day.