# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1742
_____

Jeffrey Klingenberg; Jennifer Klingenberg

*Plaintiffs - Appellees*

v.

Vulcan Ladder USA, LLC

*Defendant - Appellant*

GP International Co LLC

*Defendant*

GP International Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: May 14, 2019
Filed: August 29, 2019

_____

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Jeffrey Klingenberg and his wife sued Vulcan Ladder USA, LLC, and GP International Company, for a design defect and breach of express warranty. After a four-day trial, the jury returned a verdict for the Klingenbergs. Though the jury rejected the design-defect claim, it found Vulcan and GP breached an express warranty. The jury awarded the Klingenbergs $2,434,000 in damages. The district court[1] denied defendants' post-trial motions for judgment as a matter of law and, alternatively, a new trial. ***Klingenberg v. Vulcan Ladder USA, LLC***, 2018 WL 1248007 (N.D. Iowa Mar. 9, 2018). Vulcan and GP appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Jeffrey suffered serious injuries after falling from a ladder that Vulcan designed and distributed. GP manufactured and sold it. The ladder's label says its "Working Load" is "300 lbs." and it was manufactured to "OSHA ANSI A 14.2 SPECIFICATIONS." The Klingenbergs sued Vulcan and GP for breach of an express warranty created by the label. They also alleged the ladder was defectively designed.

The trial centered on competing expert testimony. The Klingenbergs' expert, Stephen E. Fournier, testified that a design defect caused the ladder to fail while Jeffrey was stepping onto it from the roof of a home. The defendants' expert disagreed, opining that Jeffrey slipped off the roof or ladder due to snow. Both experts agreed that the ladder met American National Standards Institute (ANSI) standards. Fournier, however, added that these were minimum safety standards, that

---

[1]The Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

a product could be defective despite meeting them, and that no ANSI standard or test existed for the defect involved in the case.

Vulcan and GP moved for judgment as a matter of law before the case was submitted to the jury, arguing that Fournier's testimony should be stricken under Federal Rule of Evidence 702, and that the Klingenbergs could not establish causation for either claim without his testimony. The defendants also asserted there was no breach of express warranty because both experts agreed the ladder met ANSI standards, and, as to GP, that the statute of limitations barred the Klingenbergs' claims. The district court reserved ruling on the statute-of-limitations issue until after trial, but otherwise denied the motion.

The jury returned a verdict for the Klingenbergs. It rejected their design-defect claim, but found they proved their breach-of-express-warranty claim. Vulcan and GP renewed their motion for judgment as a matter of law, alternatively requesting a new trial. The district court denied relief. Vulcan and GP appeal, arguing Fournier's testimony should have been excluded, the statute of limitations bars claims against GP, and insufficient evidence supports the verdict.

II.

This court reviews the "decision to admit expert testimony for abuse of discretion, giving substantial deference to the district court." *United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019). Vulcan and GP challenge Fournier's qualifications and methodology. The district court correctly rejected their challenges.

Fournier, a licensed Professional Engineer, has investigated over 1,000 constructed-related incidents, 200 of which involved ladders. He has qualified as an expert over 20 times in prior ladder cases. He participates in continuing education to maintain his engineering license and is OSHA-certified in fall protection. In his

decades of experience in construction as a civil engineer, he regularly handled ladders and ensured that construction met safety standards. His "knowledge, skill, experience, training, or education" qualify him as an expert. **Fed. R. Evid. 702**. *See* ***Kozlov v. Associated Wholesale Grocers, Inc.***, 818 F.3d 380, 394 (8th Cir. 2016) (professional registered engineer with degrees in civil engineering was qualified as expert in tractor-trailer accident case). *Cf.* ***McDaniel***, 925 F.3d at 385 (upholding admission of police officer's expert testimony where officer with extensive drug-investigation experience had testified as a drug-trafficking expert in federal court about 25 times). Contrary to the defendants' position, Rule 702 imposes no requirement that Fournier have designed an articulating ladder or participated on an ANSI committee. *See* ***Robinson v. GEICO Gen. Ins. Co.***, 447 F.3d 1096, 1100 (8th Cir. 2006) ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." (citation omitted)).

Because Fournier is a qualified expert, Rule 702 allows his testimony if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" the testimony is "based on sufficient facts or data" and "the product of reliable principles and methods;" and he "has reliably applied the principles and methods to the facts of the case." **Fed. R. Evid. 702.** "The inquiry envisioned by Rule 702 is . . . a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." ***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 594–95 (1993).

Vulcan and GP argue that Fournier's testimony should have been excluded because he did not test his theories on the damaged ladder or an exemplar model. This court disagrees. He was not required to conduct physical testing here. *See* ***Shuck v. CNH Am., LLC***, 498 F.3d 868, 875 (8th Cir. 2007) (rejecting that experts must be excluded where they do not test the product at issue or exemplar products). *See generally* ***Russell v. Whirlpool Corp.***, 702 F.3d 450, 456–57 (8th Cir. 2012)

-4-

("[A] court should use, adapt, or reject *Daubert* factors as the particular case demands. There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." (internal citation omitted)), *citing* **Daubert**, 509 U.S. at 594. Fournier's conclusions were based on his experience and expertise in ladder investigations, general engineering principles, information from Jeffrey about the accident, and his examination of the damaged ladder, its design and specifications, competitors' ladders, and photos of the accident scene. The district court acted within its discretion in admitting his testimony. *See* **Russell**, 702 F.3d at 457–58 (upholding admission of expert's testimony where expert "observed the relevant evidence, applied his specialized knowledge, excluded alternative causal theories, and reached a conclusion").

Fournier testified that a reasonable alternative safer design—installing retaining straps on the ladder—was feasible based on his review of competitors' ladders. Two models of similar ladders from competitors used retaining straps. In a prior case he worked, a competitor's model with its strap removed failed in the same way as the ladder here. He did not have to conduct a more detailed analysis. *See* **Young v. Pollock Eng'g Grp., Inc.**, 428 F.3d 786, 790 (8th Cir. 2005) (expert "did not need to conduct a detailed feasibility study" of proposed safety modifications that defendant-manufacturer successfully installed and used). Vulcan and GP cross-examined him about his alleged weaknesses, including his knowledge of the differences between the competitors' ladders and the ladder here. *See* **Daubert**, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Defendants' authorities are distinguishable. Fournier provided a sufficient case-specific, factual basis to support his opinion, unlike the experts in *Peitzmeier v. Hennessy Industries, Inc.*, 97 F.3d 293, 297–98 (8th Cir. 1996) (affirming exclusion of "wholly speculative" opinion), and *Smith v. Cangieter*, 462 F.3d 920, 924–25 (8th

Cir. 2006) (affirming exclusion of opinion connected to the facts by only the expert's *ipse dixit*). He did not "simply speculat[e]" on causation "after a great deal of prodding," unlike the expert in *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107–08 (8th Cir. 1996). And his testimony was more than "vague theorizing based upon general principles," *Pro Service Automotive, L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006), or "patent speculation" and "pure conjecture," *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999). Defendants' challenges go to the weight of his testimony, not its admissibility. *See **United States v. Coutentos***, 651 F.3d 809, 820 (8th Cir. 2011) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . . Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

### III.

This court reviews de novo a denial of a motion for judgment as a matter of law, "viewing the evidence in the light most favorable to the verdict." ***Washington v. Denney***, 900 F.3d 549, 558 (8th Cir. 2018). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." ***Allstate Indem. Co. v. Dixon***, 2019 WL 3477142, at *4 (8th Cir. Aug. 1, 2019).

### A.

GP argues that the statute of limitations bars the Klingenbergs' claims. The Klingenbergs timely filed suit against Vulcan. After the statute of limitations expired, they amended their complaint to add GP. GP raised a statute-of-limitations defense in its answer, but did not raise the defense again until midway through trial. GP told the district court that it strategically waited to raise the issue until the Klingenbergs rested. The district court correctly concluded GP waived the limitations defense.

"The final pretrial conference is critical for 'promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone.'" *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 498 (8th Cir. 2010), *quoting* **Fed. R. Civ. P. 16(c)** Advisory Committee Note (1983 Amendment). "The issues identified at the final pretrial conference and the agreements and stipulations made there are incorporated into the final pretrial order, which thereafter 'controls the course of the action.'" *Id.*, *quoting* **Fed. R. Civ. P. 16(d)**.

It is undisputed that GP did not mention a statute-of-limitations issue at the final pretrial conference or raise it for inclusion in the final pretrial order. According to GP, the issue's absence in the final pretrial order is irrelevant to its preservation for trial, *citing Coons v. Industrial Knife Co.*, 620 F.3d 38 (1st Cir. 2010). Though *Coons* held that pleading a limitations defense sufficiently preserves it for trial, the opinion does not address the failure to raise a defense in a final pretrial order. *See Coons*, 620 F.3d at 41. Applying GP's proposed rule here is contrary to binding authority. The final pretrial order "supersedes all previous pleadings and controls the subsequent course of action unless modified by a subsequent order." *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 499 (8th Cir. 2004). A party waives a pled claim "by not including it in the [final pretrial order]." *Hartman v. Workman*, 476 F.3d 633, 634 n.3 (8th Cir. 2007). *See BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC*, 748 F.3d 829, 839 n.5 (8th Cir. 2014) ("[D]efenses not included in the pretrial order are waived."), *citing Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304–05 (10th Cir. 2003).

The facts here do not justify departure from this circuit's rule. The district court required the parties to list in the "Evidentiary and Other Legal Issues" section of their proposed final pretrial order "whether recovery is barred as a matter of law by a particular defense." GP has not argued that the jointly prepared proposed pretrial order included a statute-of-limitations defense. At the final pretrial conference, the

district court and parties extensively discussed the issues for trial. GP did not mention a statute-of-limitations defense. The final pretrial order, incorporating the issues raised at the conference, did not mention a limitations defense. After additional discovery, the parties jointly moved to amend the final pretrial order to include other issues and stipulations for trial, again not mentioning any statute-of-limitations issue. By the final pretrial conference and order, the limitations issue was not part of the case. *See Friedman & Friedman*, 606 F.3d at 498 ("The final pretrial conference and order measure the dimensions of the lawsuit, including the issues to be tried."). GP's abandonment of the issue at the final pretrial conference and in the final pretrial order waived it. *See Youren*, 343 F.3d at 1304–05 (facing analogous situation as here, concluding party waived pled limitations defense by failing to include it in final pretrial order). *Cf. Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (looking to allegations in final pretrial order rather than amended complaint to determine whether party met jurisdictional requirement), *parenthetically quoting Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." (alteration in original)). The district court properly rejected GP's waived limitations defense.

### B.

Vulcan and GP challenge the sufficiency of the evidence for the breach-of-express-warranty finding, emphasizing both experts agreed the ladder met ANSI standards. Iowa law governs this diversity action, and this court reviews de novo the district court's interpretation of Iowa law. *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 823 F.3d 1161, 1165 (8th Cir. 2016).

The breach-of-express-warranty instruction required the jury to find that the defendants "expressly warranted that the working weight load of the ladder was 300 pounds and that it could be used in different positions under the 300-pound working weight." The ladder's label states:

Type IA Extra heavy-duty
Industrial Rating
Working Load: 300 lbs.

In a lower section of the label—after the model number, Vulcan's name and address, manufacturing information, and corresponding Spanish translations—it says:

MANUFACTURED TO
OSHA
ANSI A 14.2
SPECIFICATIONS

Vulcan and GP argue that, based on trade usage, the label warrants only that the ladder supports a 300-pound working load as required by ANSI A14.2. Because Fournier agreed that the ladder satisfied ANSI standards, they argue he admitted the ladder supported a 300-pound working load as warranted. This court rejects their argument.

Vulcan and GP rely on *Kolarik v. Cory International Corp.*, 721 N.W.2d 159 (Iowa 2006). The issue there was whether an olive jar's labeling that the olives were "minced pimento stuffed" warranted they were "entirely free of pits or pit fragments." *Kolarik*, 721 N.W.2d at 163–64 (olives must be pitted in order to be stuffed). The Iowa Supreme Court noted that "all descriptions by merchants must be read against the applicable trade usages with the general rules as to merchantability resolving any doubts." *Id.* at 164, *quoting* **U.C.C. § 2-313** cmt. 7 (Iowa uses U.C.C. § 2-213 in its express-warranty provision, Iowa Code § 554.2313). The court held, "Given the evidence of how the defendants receive and resell these olives, it is unrealistic to

impart to the description 'minced pimento stuffed' the meaning that defendants are guaranteeing that the olives in the jar are entirely free of pits or pit fragments." *Id.* (the evidence showed "no practical method of inspection exist[ed]" for defendants to check for pits, and plaintiff's evidence corroborated the "inevitability of some pits or pit fragments being in the product"). Here, Vulcan and GP failed to show it is "unrealistic" to interpret "Working Load: 300 lbs." as warranting the ladder could hold 300 pounds regardless of its compliance with ANSI A14.2. The only trade-usage evidence they offer is that ANSI standards require the ladder here to pass certain tests to demonstrate a 300-pound working load. Fournier testified, however, that the label means the ladder is "designed for a person weighing 300 pounds to be able to use the ladder in a safe manner" and that it could hold "300 pounds in any of the configurations that the ladder would be used in." Unlike the trade-usage evidence in *Kolarik*, Fournier also testified that ANSI standards were minimum safety standards, and that more testing could and should be conducted to ensure ladders are safe (though he did not specify what additional testing should be done).

Vulcan and GP urge this court to read the label as a whole—to limit the "Working Load" language by the "ANSI A 14.2 SPECIFICATIONS" language. Viewing the evidence most favorably to the verdict, this court rejects the defendants' reading. The jury instructions noted that an express warranty is "any promise" relating to a fact about the product that "naturally or ordinarily leads the buyer to purchase the product." The label lists the ladder's working load in a different section than the ANSI information. No evidence or law precluded the jury from finding that the label warranted a 300-pound working load in addition to warranting ANSI compliance. *See* **Iowa Code § 554.2313** (express warranties are created by "[a]ny affirmation of fact or promise" or "[a]ny description of the goods" that becomes "part of the basis of the bargain"); *Flom v. Stahly*, 569 N.W.2d 135, 140 (Iowa 1997) (finding that statements the "parties deliberately chose to make . . . part of their contract" constituted "express warranties in the contract"). As the district court noted, ANSI standards do not require that the working load be listed on this label. By Iowa contract law, the defendants' reading would make the working-load

language superfluous. *See In re Acceptance Ins. Companies Inc.*, 567 F.3d 369, 379 (8th Cir. 2009) ("Because a contract is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."), *quoting Iowa Fuel & Minerals v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991).

Sufficient evidence supports the jury's finding that Vulcan and GP "expressly warranted that the working weight load of the ladder was 300 pounds and that it could be used in different positions under the 300-pound working weight."[2]

C.

Vulcan and GP next challenge the sufficiency of the jury's verdict for the Klingenbergs on the ground that the jury rejected the design-defect claim. The district court found that the defendants waived this argument and, regardless of waiver, the argument fails. This court agrees.

Vulcan and GP believe that the jury's rejection of the design-defect claim precludes the breach-of-express-warranty finding. *See Scott v. Dutton-Lainson Co.*, 774 N.W.2d 501, 505 n.2 (Iowa 2009) ("[A] breach of warranty claim will require proof of the standard for either a manufacturing defect, a design defect, or a failure to warn."). Despite their resistance to classifying this argument as one about an inconsistent verdict, there is "no other way to characterize it." *Bavlsik v. General Motors, LLC*, 870 F.3d 800, 811 n.9 (8th Cir. 2017) ("An inconsistent verdict is one in which the jury reaches contradictory factual findings."). As in *Bavlsik*, if Vulcan and GP thought the breach-of-express-warranty claim was viable only if the jury found for the Klingenbergs' on the design-defect claim, they should have objected to

---

[2]This court, therefore, need not address the Klingenbergs' contention that Vulcan and GP waived their trade-usage argument by failing to present it to the jury.

-11-

the separate breach-of-express-warranty instruction, or they should have at least objected when the jury returned the verdict. *See id.* Vulcan and GP did not object to the jury instructions, to the format of the verdict form, or to the final verdict before the jury was discharged. They waived this challenge. *See, e.g.*, **Williams v. KETV Television, Inc.**, 26 F.3d 1439, 1443 (8th Cir. 1994) ("It is well established . . . that a party waives any objection to an inconsistent verdict if [the party] fails to object to the inconsistency before the jury is discharged."). Allowing Vulcan and GP to escape waiver here would conflict with the waiver-rule's purpose, which is "to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury and to prevent a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." **Yazdianpour v. Safeblood Techs., Inc.**, 779 F.3d 530, 538–39 (8th Cir. 2015).

Even if this court reached the merits, the district court correctly resolved the issue. This court evaluates "whether verdicts are consistent in light of how the jury was instructed, not retrospective arguments about what the law is (which are really just late arguments about how the jury should have been instructed)." **SEC v. Quan**, 817 F.3d 583, 589–90 (8th Cir. 2016), *citing* **Gallick v. Baltimore & Ohio R.R.**, 372 U.S. 108, 120–21 (1963), *and* **Lavoie v. Pacific Press & Shear Co.**, 975 F.2d 48, 55 (2d Cir. 1992). The verdict can be reconciled based on the jury instructions, so Vulcan and GP are not entitled to relief. *See id.* at 590. The breach-of-express-warranty instruction required the jury to find that the ladder did not conform to an express warranty, which the instruction described as "when defects are substantial and sufficiently serious so that the product fails to materially comply with the express warranty." It did not specifically require the jury to find that a reasonable alternative safer design could practically have been adopted when the ladder was sold or distributed. The design-defect instruction included that requirement. During deliberations, the jury asked the district court whether the competitors' ladders used retaining straps in 2011 (Jeffrey bought the ladder here in 2011). As the district court noted, "it seems likely that the jury credited the testimony of Fournier and Jeffrey and

-12-

found the ladder defective but did not find that the Klingenbergs had proved the existence of a reasonable alternative design at the time of the ladder's manufacture." The district court did not err in denying Vulcan and GP relief based on their inconsistency argument.

D.

Vulcan argues it is entitled to relief because an express warranty follows the seller under Iowa law—not the designer or distributor. Vulcan first moved for relief on this ground in a post-verdict Rule 50(b) motion. Its failure to raise the ground in a pre-verdict Rule 50(a) motion waived this argument.

A "post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003). "In other words, the movant cannot use a Rule 50(b) motion 'as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict.'" *Conseco Fin. Servicing Corp. v. North Am. Mortg. Co.*, 381 F.3d 811, 821 (8th Cir. 2004), *quoting Zachar v. Lee*, 363 F.3d 70, 72 (1st Cir. 2004).

Vulcan did not argue in a pre-verdict motion for judgment as a matter of law that its status as designer and distributor affected its liability for breach of an express warranty. In a colloquy with the district court about the verdict form, the defendants' attorney initially said that "the warranty claim has to travel with the seller of the product, and that by stipulation is GP," but requested more time to think about the issue. The attorney clarified the issue in a follow-up colloquy: "I don't believe that it matters who sold or distributed. I think it matters who communicates the warranty." He pointed out that the ladder said Vulcan, not GP. The argument whether GP communicated a warranty on the Vulcan-branded ladder does not preserve Vulcan's argument that it cannot communicate a warranty as a non-seller, especially because neither ground was included in a pre-verdict motion for judgment

-13-

as a matter of law. *See **Hyundai Motor Fin. Co. v. McKay Motors I, LLC***, 574 F.3d 637, 641–43 (8th Cir. 2009) ("Although technical precision in stating the grounds for a motion for judgment of a matter of law is not necessary, the motion must be specific enough to notify the district court and the opposing party of the underlying issue.").

In light of Vulcan's failure to comply with Rule 50, this court's review "is limited to whether the judgment sought is required to prevent manifest injustice." ***Alternate Fuels, Inc. v. Cabanas***, 538 F.3d 969, 973 (8th Cir. 2008). It is not. The Iowa Code does not limit express warranties only to sellers. *See* **U.C.C. § 2-313** cmt. 2 ("Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."). Iowa cases recognize parties other than sellers can create express warranties. *See **Tice v. Wilmington Chem. Corp.***, 141 N.W.2d 616, 626 (Iowa 1966) ("When a manufacturer, distributor, producer or retailer markets a product with representations as to its condition there should most certainly be imposed a strict accountability where the ultimate consumer relies upon those representations and suffers injury because the product did not conform to them."). *See also **Dailey v. Holiday Distrib. Corp.***, 151 N.W.2d 477, 483 (Iowa 1967) (suggesting manufacturer could be liable for breach of express warranty if seller made express warranty while acting as manufacturer's agent). The district court properly rejected Vulcan's argument that it cannot be liable for breaching a Vulcan-branded ladder's warranty created by a label with its name and address.

IV.

Vulcan and GP assert the district court erred in denying their motion for a new trial for the same reasons it erred in denying them judgment as a matter of law. This court reviews the denial of a motion for a new trial for abuse of discretion. ***Keeper***

***v. King***, 130 F.3d 1309, 1314 (8th Cir. 1997). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." ***Id.*** The district court concluded "this case came down to which expert the jury believed, and merely because the jury credited Fournier's testimony over Defendants' expert does not mean that a miscarriage of justice has resulted." *See* ***id.*** at 1314–15. This court agrees. For the same reasons defendants' alleged errors do not require reversal, a new trial is not warranted.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____